**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| ENRIQUE A. MOREY, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:13-cv-01214-TWP-TAB |
| | ) |
| GLAZER'S DISTRIBUTORS OF INDIANA, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Glazer's Distributors of Indiana, LLC's ("Glazer's") Motion for Summary Judgment. (Filing No. 61.)  On July 30, 2013, *pro se* Plaintiff, Enrique A. Morey, II ("Morey"), filed a Complaint asserting that Glazer's, his employer, discriminated against him in violation of 42 U.S.C. § 1981.  (Filing No. 1 at 2.)  Thereafter, on November 8, 2013, Morey filed an Amended Complaint, asserting that Glazer's discriminated against him on the basis of national origin and retaliated against him, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").  (Filing No. 20 at 2-3.)  Though not in either of Morey's complaints, in an attached Charge of Discrimination, Morey additionally asserts that Glazer's discriminated against him on the basis of disability.  (Filing No. 20-3 at 1.) For the following reasons, this Court now **GRANTS** Glazer's motion for summary judgment.

## I. BACKGROUND

The following material facts are not necessarily objectively true; but, as required by Fed. R. Civ. P. 56, both the undisputed and disputed facts are presented in the light most favorable to Morey as the non-moving party.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Glazer's, one of the country's largest distributors of alcoholic beverages operates a distribution facility in Indianapolis, Indiana. Morey is a Peruvian and legal resident of the United States and has resided in Indianapolis since 1981. He began working as a night shift truck loader at Glazer's, through a temporary agency. The night manager, John Cauger ("Cauger"), was Morey's supervisor. In June 2008, based upon his good work performance, Cauger sought approval to hire Morey as a full-time employee; and Glazer's Operations Manager, Bob Hurrle ("Hurrle"), approved the decision.

Upon his hiring as a full-time employee, Morey became a member of the Union. As part of his orientation, he signed the company's "Rules of Conduct" form which expressly prohibited, among other things, the "[u]se of profane, abusive, indecent or threatening language directed toward fellow employees, management, visitors or customers." (Filing No. 64-15 at 58.) Mr. Morey continued to work the night shift in the warehouse, however, his job duties now required him to review a "Summary Sheet" containing a list of products and assemble products on a conveyor line for transport.

Five months after becoming a full-time employee, in December of 2008, Cauger began expressing concerns regarding Morey's performance. In particular, Cauger noted that Morey was making mistakes in his orders and was driving the fork lift too fast, causing damage to the products. (Filing No. 64-5 at 3-4.) To address these concerns, on December 4, 2008, Cauger conducted a meeting with Morey; night supervisor, James Dumpert ("Dumpert"); and Union Representative, David Jaggar ("Jaggar"). Morey explained that the mistakes in the orders were "team mistake[s]" and other Glazer's employees also accidentally damaged products. (Filing No. 69 at 3.)

Morey observed problems of racism at Glazer's and most of the time, Cauger ignored "his complaints about other employees calling him racist names" (Filing No. 69 at 2). However, on

August 13, 2010, Morey told Human Resource Representative, Corie Clifton ("Clifton") that a co-worker, Chuck Brammer ("Brammer"), was harassing him and calling him a "Fucking Mexican." (Filing No. 64-5 at 19.)   On August 16, 2010, Clifton met with Brammer, who admitted calling Morey by the racist name.  *Id.*  As a result, Hurrle terminated Brammer's employment.  In addition, Cauger also warned other Glazer's employees that similar behavior would result in immediately termination.  (Filing No. 64-13 at 167.)

A year later, on December 21, 2011, Morey again complained to Cauger that he felt picked on, this time by his co-workers Fred Carr ("Carr") and Brian Gebhart ("Gebhart".)  (Filing No. 64-5 at 21-22.)  Specifically, Morey complained that Carr and Gebhart were wrongly accusing him of performing his job too slowly and since they were not his supervisors, they had no business telling him to hurry up.  *Id.*  Cauger met with Carr and Gebhart to address the issue.  Thereafter, Morey no longer had difficulties with Carr or Gebhart.  (Filing No. 64-5 at 5; Filing No. 64-13 at 129-30.)

A few days later, also in 2011, Cauger noticed that Morey seemed distracted, he'd observed that Morey had not been feeling well and that his product line was moving slower.  (Filing No. 64-5 at 23.)  Cauger also witnessed Morey getting into frequent conversations regarding non-work related matters, interrupting his work.  On December 30, 2011, Cauger met with Morey to discuss his concerns.  *Id.*

Despite constant complaints by Morey to Cauger, from May 2012 to August 2012, Morey was excluded from the list of Glazer's employees eligible for a gym membership at the Jewish Community Center. (Filing No. 69 at 6).

On September 11, 2012, Glazer's employee Dwayne Mulder ("Mulder") complained to Cauger about Morey's frequent use of vulgar and racist language.  (Filing No. 64-5 at 24-25.)  In

response to this complaint, Cauger immediately held a meeting with Morey, Dumpert, and Jaggar. *Id*. Cauger warned Morey regarding the seriousness of the allegations and told Morey that the company would not tolerate the alleged behavior in the future. *Id*. Morey denied making the comments. (Filing No. 64-13 at 114.)

Thereafter, under the direction of Glazer's Director of Regional Operations, Eric Lis ("Lis"), Cauger conducted a follow-up investigation. (Filing No. 64-5 at 24-25.) During the investigation, Mulder told Cauger that Morey's offensive language had stopped following Cauger's warning. (Filing No. 64-5 at 26-27.) Considering the issue resolved, Glazer's closed the investigation.

On November 12, 2012, Morey found a Summary Sheet containing the phrase "1478 total for you! Fucking Mex." (Filing No. 64-5 at 28-29.) Morey witnessed Mulder writing on the Summary Sheet. (Filing No. 1 at 2.) Cauger spoke with Mulder, who admitted to writing "1478 total for you!" but denied writing the racist phrase. (Filing No. 64-5 at 8.) Footage from Glazer's surveillance system could not confirm whether Mulder wrote both phrases. Cauger asked Morey if he wanted to pursue the matter with the Union or Human Resources, or if he wanted Cauger to speak to the crew. (Filing No. 64-5 at 30.) Morey declined the offer, but Cauger talked to the crew and advised them that they were not allowed to write on company paperwork. *Id*.

On December 14, 2012, Cauger noticed that the conveyor line in Morey's area was bent. It appeared that someone had pushed a pallet into the line with a forklift, causing the line to bend. When Cauger asked Morey if he had hit the conveyor line, Morey responded "I don't recall." Without proof that Morey damaged the line, Glazer's did not pursue any discipline of Morey. (Filing No. 64-5 at 10.)

However, the next day, Morey met with the Union's Business Representative, Tim Courtney ("Courtney"), and complained that he felt "singled out" by Cauger. (Filing No. 64-4 at 2.) Courtney recommended that Morey contact Glazer's Human Resources or Hurrle. (Filing No. 64-4 at 2-3.) Morey formally reported his complaint to Glazer's Branch Human Resources Manager, Jennifer Feinman ("Feinman"), who consulted her superior, Glazer's Regional Human Resources Director/Business Partner, Deborah Hill ("Hill"), and Glazer's began an investigation of several complaints made by Morey. (Filing No. 64-2 at 5-7; Filing No. 64-9 at 2-6.) Many of the complaints that were the subject of Glazer's investigation are the same complaints that Morey now raises in this Court. During the investigation, Morey was placed on paid leave.

Glazer's investigation revealed the following results. Regarding the vandalized Summary Sheet, Glazer's concluded that it was unable to determine who wrote the racist remark but noted that Cauger had warned the crew not to write on company documents. (Filing No. 64-2 at 6.) Regarding Cauger's accusation that Morey damaged the conveyor line, Glazer's concluded that Morey received no discipline since Glazer's could not determine who damaged the line. (Filing No. 64-2 at 7.) Regarding Morey's complaint that Cauger had intentionally prohibited him from accessing a company gym membership, Glazer's concluded that Morey and several other Glazer's employees had accidentally been left off the list of eligible employees and that Cauger did not have access to the list. (Filing No. 64-9 at 3-4.) Hill immediately added Morey's name to the gym membership list. (Filing No. 64-9 at 3.) Finally, regarding Morey's complaint that Cauger "continually reprimanded (him) in front of other employee's instead of in private", Glazer's concluded that Morey's complaints of unequal, public discipline could not be corroborated by Morey's coworkers. (Filing No. 64-2 at 7.) Ultimately, Glazer's concluded that there was no evidence supporting Morey's complaint of unfair treatment by Cauger. (Filing No. 64-3 at 45.)

Throughout the investigation, and particularly troubling to Hill and Glazer's, several of Morey's coworkers repeatedly expressed concerns regarding Morey's continued use of vulgar and racist language and Morey's numerous threats against Glazer's employees.  Specifically, co-workers alleged that Morey had used the work Nigger, Jew and red-neck white trash numerous times over the last few months and six months prior had threatened to shoot two co-workers. (Filing No. 64-2 at 4, 7; Filing No. 64-3 at 27-43.)  On January 4, 2013, Hill conferred with Hurrle and Lis to discuss how best to deal with this worrisome information.  (Filing No. 64-2 at 7.) Initially, Glazer's was concerned that disciplining Morey, for misconduct revealed during an investigation into Morey's complaints against Cauger, might have a chilling effect on other Glazer's employees reporting violations of company policy.  *Id.*  Nevertheless, given the severity of the accusations and alleged threats of violence, Glazer's concluded that the problem could not be ignored.  *Id.*

On January 7, 2013, Lis met with Morey and Courtney to review the results of Hill's investigation into Morey's complaints, and to explain Hill's conclusions.  Lis also discussed the allegations brought by Morey's coworkers, including that Morey had threatened to shoot two Glazer's employees and that Morey had made repeated racial and ethnic slurs.  (Filing No. 64-8 at 6.)  Given the gravity of these well-substantiated accusations, Lis told Morey that he could either return to work under a "Final Warning" or resign with a severance.  *Id.*

Morey privately discussed the agreement with Courtney, and responded that he wanted to continue working at Glazer's.  (Filing No. 64-4 at 5.)  Accordingly, Lis documented the Final Warning and explained that any future inappropriate behavior would result in Morey's termination. (Filing No. 64-16 at Ex. 19.)  Morey signed the Final Warning.  (Filing No. 64-4 at 5.)  A few days

later, Morey filed a grievance with the Union contesting the Final Warning, but the Union held it in abeyance.  (Filing No. 64-4 at 6-7; Filing No. 64-14 at 21-22.)

On July 11, 2013, Morey and Mulder got into a disruptive argument.  (Filing No. 64-6 at 3.)  Both accused the other of making racist comments and went to Cauger.  *Id.*  Feinman subsequently investigated the incident.  (Filing No. 64-9 at 5-6.)  During the investigation, Feinman learned that Morey had repeatedly used obscene and racially-charged words during the argument.  (Filing No. 64-5 at 12-13; Filing No. 64-9 at 5-6, 22-31.)  Because Morey had already received a Final Warning for similar behavior, on July 16, 2013, Hurrle terminated Morey's employment.  (Filing No. 64-1 at 9.)

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).   In ruling on a motion for summary judgment, the court reviews the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that, when the non-movant has the burden of proof on a substantive issue, specific forms of evidence are not required to negate a non-movant's claims in the movant's summary judgment motion, and that a court may, instead, grant such a motion, "so long as whatever is before the district court

demonstrates that the standard . . . is satisfied."). *See also* Fed. R. Civ. P. 56(c)(1)(A) (noting additional forms of evidence used in support or defense of a summary judgment motion, including: "depositions, documents electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials").

Thereafter, a nonmoving party, who bears the burden of proof on a substantive issue, may not rest on its pleadings but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Celotex Corp.*, 477 U.S. at 323-24; Fed. R. Civ. P. 56(c)(1). Neither the mere existence of some alleged factual dispute between the parties nor the existence of some "metaphysical doubt" as to the material facts is sufficient to defeat a motion for summary judgment. *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997); *Anderson*, 477 U.S. at 247-48; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [it] relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Similarly, a court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth*, 476 F.3d at 490. Instead, when

ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.  *Id.*

### III.  DISCUSSION

In each of his Complaints, Morey alleges multiple claims of discrimination which the Court will discuss in turn.

### A.    ADA Discrimination

In the Charge of Discrimination, filed by Morey with the Equal Employment Opportunity Commission ("EEOC") on August 14, 2013 and attached as an exhibit to his Amended Complaint, Morey asserts that Glazer's discriminated against him on the basis of disability.  (Filing No. 20-3 at 1.) This Court concludes that any disability claim now raised by Morey in response to Glazer's summary judgment motion is both untimely and not sufficiently supported by material facts to overcome Glazer's motion for summary judgment.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes; (2) that he is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that he has suffered an adverse employment action as a result of his disability.  *Jackson v. City of Chi.,* 414 F.3d 806, 810 (7th Cir. 2005); *Martinez v. Ind. Univ. Health, Inc.*,

In order to demonstrate disability, a plaintiff must show (1) that he has a physical or mental impairment that substantially limits him in one or more major life activities; (2) that he has a record of such an impairment; or (3) that the employer regarded him as having such an impairment.  42 U.S.C. §§ 12102(1)(A)-(C) (2012).  Alternatively, to establish a claim for failure to accommodate, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability.  42

9

U.S.C. § 12112(b)(5)(A) (2012).  *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).

The Americans with Disabilities Act of 1990 ("ADA") prohibits employers from discriminating against a qualified individual with a disability because of the individual's disability. 42 U.S.C. § 12112(a) (2012).  *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360-61 (2001).  To this end, the ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business."  42 U.S.C. § 12112(b)(5)(A) (2012); *Garrett*, 531 U.S. at 361.

To begin, the Court finds it nearly impossible to determine whether Morey is actually raising a disability discrimination claim against Glazer's.  As stated previously, there is no ADA claim in either Complaint. Indeed, the only evidence or argument Morey submits to substantiate an ADA claim is a statement in the Response that he had a "work related" "ingunal [sic] hernia" and that he "was taken to hospital by ambulance from Glazer's warehouse".  (Filing No. 69 at 7-8.)  The Court remains uncertain whether Morey is arguing that Glazer's discriminated against him on account of his hernia or that Glazer's failed to accommodate his alleged disability.  In any event, the Court concludes that any disability claim raised by Morey in response to Glazer's summary judgment motion is untimely, not properly pled and not sufficiently supported by material facts to overcome Glazer's motion for summary judgment.

Regardless of which type of disability claim Morey may have alleged as part of his initial Charge of Discrimination, if Morey was actually alleging one at all, any ADA claim before this Court is untimely because Morey did not plead an ADA claim in either of his Complaints.  Morey

was required to file his ADA claim within ninety days of receiving the Notice of Right to Sue from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1) (2012); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009).   In Morey's case, the EEOC mailed its Notice of Right to Sue on September 26, 2013.  (Filing No. 20-5 at 3.)  Therefore, Morey had until December 26, 2013 to assert his disability discrimination claim.   However, Morey does not mention either disability discrimination or the ADA in either of his Complaints.  (Filing No. 1; Filing No. 20.)  Further, both form Complaints submitted by Morey, have prominently-displayed jurisdictional checkboxes on the first two pages.  (Filing No. 1 at 1-2; Filing No. 20 at 1-2.)   In both Complaints, Morey left the box for ADA discrimination blank.  (Filing No. 1 at 2; Filing No. 20 at 2.)

Accordingly, since Morey has failed to affirmatively plead an ADA disability claim in either of his Complaints, to the extent that he may still be arguing a disability discrimination claim now, the Court considers the claim to be untimely-filed and, therefore, subject to summary judgment.  *Cf. Lloyd*, 552 F.3d at 600 (affirming summary judgment for employer in ADA discrimination case where plaintiff failed to file suit within 90 days of receiving the Notice of Right to Sue); *Faris v. Ind. Univ.-Purdue Univ. at Indianapolis*, No. 98-3057, 1999 WL 349195, at **2-3 (7th Cir. May 25, 1999) (unpublished opinion) (affirming summary judgment against a *pro se* plaintiff where complaint alleging ADA discrimination was filed more than 90 days after receipt of the Notice of Right to Sue).

In addition, even if this Court were to *very* liberally construe Morey's pleadings and conclude that Morey's disability claim was pled as part of his Amended Complaint, Morey does not present any evidence to support such a claim.  Instead, the entirety of Morey's argument and evidentiary support is limited to an unsupported assertion that he had a work-related hernia.

11

While the Court may give the benefit of the doubt to *pro se* litigants, they still have an obligation to adhere to the rules and procedures of the Court. *Black v. Rieth-Riley Const. Co.,* 957 F. Supp. 177, 180 (S.D. Ind. 1997) ("even though *pro se* litigants do benefit from various procedural protections, they are not entitled to a general dispensation from the rules of procedure") (internal quotations omitted); *Powers v. Runyon,* 974 F. Supp. 693, 696 (S.D. Ind. 1997) ("Although the pleadings of *pro se* litigants are construed liberally, there is no lower standard when it comes to rules of evidence and procedure."). Accordingly, regardless of his *pro se* status, Morey still bears the affirmative burden of presenting evidence that a disputed issue of material fact exists.

Because Morey has not presented any facts, argument, or evidence to support a claim of disability discrimination, this Court must accept Glazer's facts as true and must, thereby, conclude that Morey's disability claim is not factually sustainable. *See* Fed. R. Civ. P. 56(e) ("If a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion; [and] grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it"). *See also Koszola v. Bd. of Educ. of Chi.*, 385 F.3d 1104, 1111 (7th Cir. 2004) ("summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events") (internal quotations omitted); *Grady*, 2015 WL 1011355, at **5-8 (holding that several of a pro se plaintiff's claims were subject to summary judgment because the plaintiff failed to present evidence of material fact issues).

Accordingly, this Court considers summary judgment to be appropriate as to any disability discrimination claim raised by Morey.

**B.**     **Title VII and § 1981 Discrimination**

Next, Morey argues that Glazer's discriminated against him on account of his national

origin, which is Peruvian, however, he has not presented sufficient factual support to establish this claim or to survive summary judgment.

Title VII makes it unlawful for an employer, "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2012). Claims arising under 42 U.S.C. § 1981, use the same legal standards for liability as Title VII. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004). A plaintiff alleging discrimination under Title VII or § 1981 may prove such discrimination using either the direct or indirect method of proof. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 849-50 (7th Cir. 2008)

Morey's Title VII discrimination is not well-explained. Morey merely lists a number of uncomfortable events that occurred during the course of his employment, including his termination, and argues that they were motivated by a discriminatory animus. Nevertheless, Morey's threadbare and unsupported arguments fail to demonstrate a viable claim of national origin discrimination under either the direct and indirect methods of proof.

### 1.    <u>Direct Method</u>

The direct method of proof requires a plaintiff to produce evidence that a defendant was motivated by animus toward a protected class when the plaintiff suffered an adverse employment action. *Andonissamy*, 547 F.3d at 849. Under the direct method, a plaintiff may use either direct evidence or a "convincing mosaic" of circumstantial evidence in order to prove discrimination. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Direct evidence establishes "the fact in question without reliance on inference or presumption." *Mannie v. Potter*, 394 F.3d 977, 983 (7th

Cir. 2005).  Alternatively, circumstantial evidence "allows a jury to infer intentional discrimination by the decision maker."  *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004).

Circumstantial evidence in employment discrimination cases typically comes in three categories, including: (1) evidence of suspicious timing, ambiguous oral or written statements, or behavior or comments directed at other employees in the protected group; (2) evidence that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.  *Coleman*, 667 F.3d at 860.

Morey presents no direct evidence of discrimination, either in the form of an admission by a decision-maker or in the form of circumstantial evidence.  To begin, Morey presents no evidence that either his supervisor, Cauger, or the person responsible for terminating his employment, Hurrle, made any derogatory or discriminatory remarks based on Morey's national origin. Although Morey's co-worker, Brammer, directed a racial slur towards Morey early during Morey's employment, Brammer was Morey's co-worker and not a decision-maker for Glazer's. *See Darchak*, 580 F.3d at 631 ("[d]irect evidence would be an admission by the *decisionmaker* that the adverse employment action was motivated by discriminatory animus") (emphasis added).

Further, the evidence is undisputed that Hurrle took prompt action to terminate Brammer's employment shortly after investigating Brammer's statement and that Cauger took similarly prompt action to effectively warn Glazer's employees against similar behavior.  ([Filing No. 64-8 at 2](); [Filing No. 64-13 at 167]().)  In addition, although Morey contends that his co-worker, Mulder, once wrote a racial slur on his Summary Sheet, the facts are undisputed that Cauger took prompt action to investigate the incident and, despite being unable to determine who actually wrote the

offensive comment, effectively warned all Glazer's's employees to stop writing on company paperwork.  (Filing No. 64-5 at 30.)

    Not only do these responses significantly undercut Morey's assertion that Hurrle and Cauger were motivated by animus against Morey's nation origin, the responses are also sufficient to extinguish Glazer's liability as an employer.  *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014) at 985-86 (noting that there is no basis for employer liability when a defendant employer takes prompt action in response to an employee's complaints of harassment from his co-workers and the employee makes no similar complaints thereafter).

Accordingly, this Court concludes that Morey has failed to present sufficient direct evidence of national origin discrimination to overcome Glazer's summary judgment motion.

### 2.    Indirect Method

Similarly, Morey cannot factually establish that Glazer's was motivated by a discriminatory animus against Morey's national origin, under the indirect method of proof.  Under the indirect method of proof, a *prima facie* case of discrimination requires a showing that: (1) the plaintiff is a member of a protected class; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) was treated less favorably than a "similarly situated" non-protected class member.  *Andonissamy*, 547 F.3d at 849-50; *Velez v. City of Chi.*, 442 F.3d 1043, 1049-50 (7th Cir. 2006).  To establish the *prima facie* case, a plaintiff must raise a genuine issue of material facts for each element.  *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 798 (7th Cir. 1995).  Once the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action.  *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir. 2007).  If the defendant does so, the burden shifts back to the plaintiff to submit evidence

demonstrating that the defendant's explanation is pretextual. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). To establish pretext, a plaintiff must identify such "weaknesses, implausibilities, inconsistencies, or contradictions" in the defendant's asserted reasons that a reasonable person could find them not credible and infer that the defendant did not act for the nondiscriminatory reasons asserted. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

Morey satisfies the first two prongs. Glazer's does not dispute that Morey is of Peruvian national origin and, thus, falls within a protected class for purposes of Title VII. As such, the first prong of Morey's *prima facie* case is satisfied. In addition, Morey's termination qualifies as an adverse employment action, satisfying the second prong of Morey's *prima facie* case.

With respect to the third prong, Morey cannot factually establish that he was meeting Glazer's legitimate expectations. Glazer's "Rules of Conduct" form, which Morey signed during his orientation, expressly prohibit, among other things, the "[u]se of profane, abusive, indecent or threatening language directed toward fellow employees, management, visitors or customers." (Filing No. 64-15 at 58.) Glazer's identifies numerous occasions, including the incident that ultimately led to Morey's termination, wherein Morey used vulgar and racist language or made violent threats against his co-workers.

For instance, in September 2012, Cauger investigated complaints made by several of Morey's co-workers regarding Morey's frequent use of vulgar and racist language and warned Morey that Glazer's would not tolerate use of such language going forward. (Filing No. 64-5 at 24-25.) Later, in late 2012 and early January 2013, while investigating Morey's complaints against Cauger, Glazer's learned that Morey had continued to use vulgar and racist language and had also made numerous violent threats against several co-workers. (Filing No. 64-2 at 4, 7; Filing No. 64-

3 at 27-43.)  Glazer's was seriously concerned about Morey's behavior, which was in direct violation of Glazer's "Rules of Conduct", and placed Morey on "Final Warning" status, thereby notifying Morey that any similar behavior in the future would result in his immediate termination. (Filing No. 64-2 at 7; Filing No. 64-8 at 6.)

Thereafter, on July 11, 2013, Morey was involved in a highly disruptive argument with a coworker, in which both Morey and his co-worker Mulder, used vulgar and racially-charged words.  (Filing No. 64-5 at 12-13; Filing No. 64-6 at 3 and 6; Filing No. 64-9 at 5-6, 22-31.) Because Morey was already on Final Warning status for these same behaviors, Glazer's terminated Morey's employment.  (Filing No. 64-1 at 9.)  The Final Warning, which Morey signed, specifically states "…you are being moved to the Final Warning step of the disciplinary process. Any future inappropriate behavior and/or violations of these policies, including but not limited to threats of violence and /or racial/ethnic slurs, will result in immediate termination of your employment".  (Filing No. 64-8 at 35.)

Unfortunately for Morey, he has submitted nothing to refute Glazer's version of the facts and, once again, this Court must accept them as true.  Glazer's has designated statements from independent witnesses to the incident – Oldham, Morrow, Morelli and Dumpert – and each affirms as follows:  Morey and Mulder argued loudly about a non-work related issue, Morey stated that Mulder was "what's wrong with his race," Mulder jumped over the line and the two men chest-bumped, Mulder got on his forklift and headed toward the supervisor, Morey got into a different forklift and also headed toward the supervisor area, and Morey repeatedly screamed that Mulder was a "racist motherfucker" and other obscenities.  Accordingly, under the undisputed facts, no reasonable jury can conclude that Morey was meeting Glazer's legitimate expectations at the time he was terminated.

17

Finally, Morey cannot establish that he was treated worse than a similarly situated employee. To sufficiently establish a "similarly-situated" comparator, a plaintiff must show that there is someone, not of his protected class, who is directly comparable to him in all material aspects. *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008). In the usual case, a plaintiff must show that the comparators dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct without any differentiating circumstances to distinguish their conduct or the employer's treatment of them. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). "A meaningful comparison is one which serves to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints of discrimination." *Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008) (internal quotations omitted). *See also Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 689 (7th Cir. 2006) (noting that the central question is whether a plaintiff and his colleagues engaged in conduct of comparable seriousness but received dissimilar treatment).

In this regard, Morey loosely points to two coworkers who he asserts had a significant number of disciplinary "points" but were not terminated by Glazer's. (Filing No. 69 at 4). This argument fails for two reasons. First, once again, Morey does not present or designate any evidence to support his assertions. Accordingly, by merely making blanket assertions without citing to evidence to demonstrate a factual dispute, Morey has failed to meet his burden under Fed. R. Civ. P. 56(c)(1) and S.D. Ind. L.R. 56-1(b) ("A party opposing a summary judgment motion *must* . . . file . . . any evidence (that is not already in the record) that the party relies on to oppose the motion") (emphasis added).

Second, even assuming Morey could present evidence to substantiate his factual assertions

about his coworker, Morey cannot establish that his coworkers were "similarly-situated". Unlike the coworkers cited in his response, Morey was not terminated for accruing disciplinary points. Instead, he was terminated for failing to abide by the terms of his Final Warning. (Filing No. 64-1 at 9.) Morey has failed to submit evidence of another Glazer's employee who violated the terms of a Final Warning and was not fired, and he, therefore, cannot establish sufficient comparator evidence to overcome summary judgment. *Cf. Plummer v. Potter*, 237 Fed. App'x 90, 92 (7th Cir. 2007) (unpublished opinion) (holding that employee terminated for misrepresenting a medical condition could not compare herself to employees disciplined for unrelated issues such as absenteeism).

As a result, because Morey cannot factually establish that he was meeting Glazer's legitimate expectations at the time of his termination and that a similarly situated employee was treated less harshly for the same behavior, Morey cannot establish a *prima facie* case of national origin discrimination.

Nevertheless, even assuming, for the sake of argument, that Morey could establish a *prima facie* case of discrimination, Morey cannot establish that Glazer's asserted reason for terminating his employment was pretextual. Once the defendant employer asserts a non-invidious explanation for its employment decisions, the plaintiff must then present sufficient evidence to show that the employer's explanation is merely pretextual. *Keeton*, 667 F.3d at 884. To establish pretext, a plaintiff must identify such "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's asserted reasons that a reasonable person could find them not credible. *Boumehdi*, 489 F.3d at 792. Pretext means "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). Accordingly, the question for the Court is not whether the employer's explanation for its employment decision was

"accurate, wise, or well-considered", but whether the employer's explanation was "honest". *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006).

A plaintiff can attempt to demonstrate that the employer's explanations are pretextual either directly, by showing that "a discriminatory reason more likely motivated" the employer's actions, or indirectly, by showing that the employer's explanations are "unworthy of credence." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009). To show that the employer's non-discriminatory explanations are not credible, the plaintiff must point to evidence that the employer's stated reasons are not the real reasons for the employer's action, have no grounding in fact, or are insufficient to warrant the employer's decision. *Id.*

While the Court is not in the position to "sit as a superpersonnel department that will second guess an employer's business decision . . . [the Court] need not abandon good reason and common sense in assessing an employer's actions." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001); *Miller*, 2014 WL 4259628, at *6.

Morey presents no evidence or argument that he was terminated for any reason other than violating the Final Warning. Further, no reasonable jury could conclude that Glazer's purported reason for his termination was a lie. In particular, Glazer's points out that its decision to place Morey on Final Warning status was the result of a careful investigation by Glazer's Human Resources Director in which several Glazer's employees complained of Morey's vulgar language and violent threats. (Filing No. 64-2 at 5-7; Filing No. 64-3 at 27-43; Filing No. 64-9 at 2-6.) Likewise, Glazer's decision to terminate Morey's employment was made after Glazer's conducted a similar investigation regarding Morey's argument with his coworker Mulder. (Filing No. 64-1 at 9; Filing No. 64-5 at 12-13; Filing No. 64-9 at 5-6.)

Consequently, Morey cannot establish a claim of national origin discrimination under either the direct or indirect method of proof.

## C.  <u>Title VII Harassment</u>

Morey also claims that he was harassed on account of his national origin.  However, similar to his other claims, Morey failed to present sufficient facts to substantiate his claim and to overcome summary judgment.

To establish a Title VII harassment claim, a plaintiff must show that: (1) his work environment was both subjectively and objectively offensive; (2) the harassment was motivated on account of a protected characteristic; (3) the conduct was severe or pervasive enough to alter the conditions of his environment and create a hostile environment; and (4) there is a basis for employer liability.  *Chaib*, 744 F.3d at 985.

Morey makes a general statement that Glazer's is a racist company (Filing No. 69 at 2), but the only potentially harassing behavior that Morey identifies on account of his national origin is a racial slur made by his coworker Brammer and a racial slur on Morey's Summary Sheet, allegedly written by his coworker Mulder.  In both instances, however, the evidence is undisputed that Glazer's took prompt action once informed of the harassing behaviors.  Specifically, Hurrle terminated Brammer's employment shortly after investigating Brammer's statement; and Cauger effectively warned Glazer's employees against similar behavior.  In addition, despite being unable to determine who wrote the offensive portion of the comment on Morey's paperwork, Cauger effectively warned Glazer's employees to stop writing on company paperwork.  ([Filing No. 64-5 at 30](#).)

 An employer may only be held liable for harassment made by an employee's co-workers if the employer is negligent in responding to the alleged harassment.  *Chaib*, 744 F.3d at 985;

*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013).  Accordingly, when a defendant employer takes prompt action in response to an employee's complaints of harassment from his co-workers and the employee makes no similar complaints thereafter, there is no basis for employer liability. *See Chaib*, 744 F.3d at 985-86 (affirming summary judgment on this basis).

Morey does not provide evidence to dispute that Glazer's took prompt action to address the harassment against him nor does Morey provide evidence to demonstrate that Glazer's actions were ineffective in preventing future harassment against him.  Accordingly, there is no basis for employer liability and Morey cannot, therefore, establish a claim of harassment under Title VII.

**D.      Retaliation**

Finally, Morey argues that his termination was in retaliation for complaining about his supervisor, Cauger, to Glazer's Human Resources Department.[1]  As with Morey's other claims, however, Morey also fails to present sufficient evidence to establish this claim and overcome summary judgment.

Title VII prohibits an employer from acting in retaliation against employees who oppose any practice made unlawful under Title VII.  42 U.S.C. § 2000e-3(a) (2012).  Stated differently, "[a]n employer may not retaliate against an employee who has complained about discrimination or other employment practices that violate Title VII."  *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005).  As with a plaintiff's discrimination claims, a plaintiff may proceed under either a direct or indirect method of proof to establish his retaliation claim.  *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *Miller*, 2014 WL 4259628, at *6.

---

[1] Although Morey does not explain whether his retaliation claim is brought under the ADA or Title VII, the Court notes that the elements of a retaliation claim are identical under both statutes.  *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998).

1.    **Direct Method**

Morey cannot establish a claim of retaliation under the direct method of proof.  Under the direct method of proof, a plaintiff must establish: (1) a statutorily protected activity; (2) an adverse employment action taken by the employer; and (3) a causal connection between the protected activity and the adverse action.  *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008).  The type of circumstantial evidence that a plaintiff may produce to survive summary judgment under the direct method includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically received better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.  *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).

As stated previously, Glazer's does not dispute that Morey engaged in protected activity when he complained about the actions of his supervisor, Cauger.  Accordingly, the first element of Morey's retaliation claim is established under the direct method.

On the issue of adverse employment action, Morey argues that, after he complained about Cauger's actions, Glazer's retaliated against him by assigning him extra work and by terminating him.  Morey's assertion that he was assigned extra work, however, is completely unsupported by any evidence and therefore, must be rejected outright by this Court.

Nevertheless, even if true, this Court notes that assigning an employee more work does not constitute an adverse employment action.  *See, e.g.*, *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).  In

23

contrast, there is no dispute that Glazer's decision to terminate Morey's employment amounted to an adverse employment action, and this Court considers the decision to be materially adverse.

Moreover, Morey cannot establish the requisite causal connection between his complaints against Cauger and his termination.  "Mere temporal proximity" is insufficient to raise a question of material fact regarding causation.  *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).  While suspicious timing alone is insufficient to establish a genuine issue of material fact, suspicious timing may permit a plaintiff to survive summary judgment if there is other evidence that supports the inference of a causal link.  *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005) ("When an adverse employment action follows on the close heels of protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected conduct, the causation element . . . is typically satisfied"); *Martinez*, 2013 WL 5775082, at *7.

Here, Morey made a formal complaint against Cauger to Glazer's Human Resources Department on December 19, 2012. (Filing No. 64-9 at 2.) Glazer's terminated Morey's employment nearly seven months later, on July 16, 2013.  Morey submits no evidence to link these two events together. In his response, Morey submits that "Glazer's used retaliation against plaintiff, given [sic] plaintiff more work than usually [sic]. It's all on records [sic]." (Filing No. 69 at 2). As stated earlier, Federal Rule of Civil Procedure 56 demands that the non-movant [c]ite to particular parts of materials in the record in order to show that there is a genuine dispute of fact between the parties on a relevant point Rule 56(c)(1)(A). Additionally, S.D. Ind. Local Rule 56-1 (e) adds that "[t]he court has no duty to search or consider any part of the record not specifically cited in the manner described in subdivision (e)." Accordingly, the Court has not searched the record, as Morey suggest. Morey's failure to provide any analysis of the claim, to designate

evidence or argument as to why a factfinder might conclude that Glazer's embarked on a course of retaliatory conduct because he had engaged in protected conduct, is fatal.

In addition, this Court considers the significant time separating these two events to, alone, diminish Morey's arguments regarding causation.  *See Young-Gibson v. Bd. Of Educ. of City of Chi.*, 558 F. App'x 694, 699 (7th Cir. 2014) (unpublished opinion) (finding that the timing is not suspicious where the protected action and the adverse action were seven months apart). This conclusion is further supported by the fact that, during those seven months, Glazer's conducted an investigation revealing Morey's disruptive and potentially dangerous behaviors, placed Morey on Final Warning status for those behaviors, and found Morey to have violated the terms of the Final Warning.  Under such a mountain of facts, Morey's unsupported assertions cannot establish a causal connection link between his complaint and his termination.

Accordingly, Morey cannot establish his retaliation claim under the direct method.

### 2.   **Indirect Method**

Under the indirect method, the first two elements are the same as the direct method of proof.  *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009).  However, instead of proving a direct causal link, a plaintiff must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination.  *Id*. at 786-87.  Once a plaintiff establishes the *prima facie* case under the indirect method, the defendant must articulate a nondiscriminatory explanation for its action.  *Id*. at 787. Thereafter, the burden shifts back to the plaintiff to demonstrate that the defendant's explanation is pretextual.  *Id*.

As already discussed, Morey has not presented sufficient evidence to establish either that he was meeting Glazer's legitimate expectations at the time his termination or that Glazer's

25

asserted reason for terminating him was pretextual.  Consequently, Morey also cannot establish his retaliation claim under the direct method.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Glazer's Motion for Summary Judgment as to all of Morey's claims.  (Filing No. 61).

**SO ORDERED.**

Date: 9/22/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Enrique A. Morey, II
4815 Tempe Court
Indianapolis, Indiana  46241

Hannesson Ignatius Murphy
BARNES & THORNBURG LLP (Indianapolis)
hmurphy@btlaw.com